# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 2000 Session

## STATE OF TENNESSEE v. RALPH DEWAYNE MOORE

**Direct Appeal from the Criminal Court for Roane County**
**No. 11679     E. Eugene Eblen, Trial Judge**

---

### No. E1999-02743-CCA-R3-CD
### October 30, 2000

---

The defendant was convicted of reckless endangerment with a deadly weapon, a shotgun. The defendant asserts that insufficient evidence supported the verdict against him. We affirm, holding that the defendant's loading the weapon and recklessly pointing it at the victim while angry, in such a manner that death or serious bodily injury was imminent, were actions sufficient to constitute the offense of reckless endangerment whether said weapon was fired or not.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

Joe Walker, District Public Defender, and Walter B. Johnson, II, Harriman, Tennessee (on appeal); Rowland Cowden, Assistant Public Defender (at trial), for the appellant, Ralph Dewayne Moore.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; J. Scott McCluen, District Attorney General; and Roger Delp, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

### Introduction

The defendant, Ralph Dewayne Moore, was convicted by a Roane County Criminal Court jury of reckless endangerment with a weapon, a Class E felony. See Tenn.Code Ann. § 39-13-103(b). He was sentenced as a Range I standard offender to one year, with seven days in jail and the remainder on Community Corrections.[1] He asserts that insufficient evidence supported the

---

[1] For other charges incurred during the defendant's confrontation with the Taylor family, he also received thirty days for disorderly conduct and eleven months and twenty-nine days for assault. All were imposed concurrently, with seven days confinement and the remainder on Community Corrections.

verdict because the evidence established neither the direction of the weapon's discharge nor the identity of the actual shooter. After careful review, we affirm the conviction.

## Background

According to the trial testimony, Lakisha Taylor is the daughter of the victim, Irvin Taylor. Lakisha testified that, in September 1996, when she, Nikita Taylor, and a friend were standing under a tree in the rain at the Taylors' residence, the defendant, next door at his uncle's house, began cursing at the girls. The girls entered the Taylor residence, and Lakisha called her mother to inquire about the defendant.

Quickly, Lakisha Taylor's mother, Sandra Taylor, and her father, the victim, arrived, in that order, at the house. After the victim arrived, he stood on his porch, as the defendant entered the victim's driveway and threatened him. Lakisha testified that the defendant pretended to pull a gun, and the victim responded by picking up a baseball bat from the ground. Further, she stated that, at the defendant's request, John Russell, a friend of the defendant, brought the defendant a shotgun. The defendant loaded the weapon and pointed it at Lakisha.

Lakisha testified that when the defendant pointed a shotgun at her, the victim stepped between her and the weapon. She entered her home and then heard a gunshot. She did not see the weapon discharge.

The victim then testified. He stated that the defendant began to curse and threaten him when he arrived home. The defendant simulated drawing a weapon and shooting the victim. The victim then picked up a ball bat from the yard and began approaching the defendant. He testified that the defendant yelled for John, who brought the defendant a shotgun from a car trunk. The defendant loaded it and pointed it at Lakisha. The victim stepped between Lakisha and the weapon and told his daughter to leave. The victim then retreated into his house because he feared being shot. Like Lakisha, the victim did not see the subsequent discharge. On cross-examination, the victim stated that the investigating officers found neither a spent shell casing nor any shotgun pellets.

Sandra Taylor, the victim's wife, testified that she arrived home before the victim. As she exited her car in the driveway, the defendant called her several obscenities and threatened her. She took her children into the house and left to find her husband. When passing the defendant, she concluded that he had been drinking intoxicants. After the defendant brandished the shotgun, she fled to a neighbor's house to call the police and heard, but did not see, the shotgun discharge.

The defendant was originally charged with disorderly conduct, a Class A misdemeanor, and two counts of aggravated assault, a Class C felony. He was found guilty of disorderly conduct, of misdemeanor assault as a lesser-included offense of one aggravated assault charge, and of the instant reckless endangerment as a lesser-included offense of the remaining aggravated assault charge.

## Analysis

### *Sufficiency of the evidence*

The defendant was convicted of reckless endangerment:

    (a) A person commits an offense who recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury.

    (b) Reckless endangerment is a Class A misdemeanor; however, reckless endangerment committed with a deadly weapon is a Class E felony.

Tenn. Code Ann. § 39-13-103(a)-(b). The defendant asserts that insufficient evidence supported the verdict against him because none of the witnesses testified that they saw the shotgun being fired and because the state did not prove that he fired the weapon. Further, the defendant asserts that, even if he fired the weapon, no evidence establishes that the shotgun was fired at the victim.

When a defendant challenges the sufficiency of the evidence supporting the verdict against him, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Id. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In part, the defendant alleges that his conviction can not stand because neither eyewitness testimony nor physical evidence established the direction of the discharge. We disagree. If such evidence established that the weapon was fired at the victim and not in the air or some other direction, then that evidence clearly would support a reckless endangerment conviction. We conclude, however, that the defendant's firing the weapon was not necessarily requisite to conviction.

The statute requires that a defendant's actions constitute a reasonable probability of injury, beyond firing a weapon into the air or into a tree top. See State v. Fox, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996)("Merely discharging a weapon, standing alone, is not sufficient to constitute commission of reckless endangerment."); see also State v. Culbertson, No. 03C01-9412-CR-00449 (Tenn. Crim. App. filed Aug. 30, 1995, at Knoxville) (similar holding when defendant fired weapon into ceiling). Thus, to constitute the offense of reckless endangerment, those actions must endanger a person or persons in a particular defined area, a "zone of danger." See State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999). For example, this Court has determined that a defendant's shooting a dog across a street at night, when that dog was fifteen to twenty feet from the victim, was within the vicinity of the victim and constituted the requisite danger. See State. v. Steven Willard Self, No. 03C01-9807-CR-002 (Tenn. Crim. App. filed July 30, 1999, at Knoxville).

The issue of our statute's imminence requirement, crucial to this analysis, is demonstrated by contrast with the analogous Model Penal Code section:

> A person commits a misdemeanor if he recklessly engages in conduct which places or may place another in danger of death or serious bodily injury. Recklessness and danger shall be presumed where a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded.

Model Penal Code § 211.2. As noted by the Supreme Court in the Payne opinion, the relevant Code requires something above the *mere possibility* of danger, and the state must establish *imminent* threat. See Payne, 7 S.W.3d at 28. For purposes of the statute, "imminent" is that which is:

> Near at hand; mediate rather than immediate; . . . impending; on the point of happening; threatening; menacing; perilous. Something which is threatening to happen at once, something close at hand, something to happen upon on the instant, close although not yet touching, and on the point of happening.

Black's Law Dictionary 750 (6th ed. 1990), quoted in Payne, 7 S.W.3d at 28).

When we contrast the relevant subsections of the aggravated assault statute, the original charge, and the reckless endangerment statute, see Tenn. Code Ann. §§ 39-13-102(a)(1)(B), -103(a)-(b), we discern three significant differences. First, the mens rea is "intentional" or "knowing" for the former and "reckless" under the latter. Second, the state legislature has classified the relevant aggravated assault as a Class C felony, whereas the instant reckless endangerment constitutes a Class E felony. Finally, one may commit reckless endangerment without the victim realizing the threat, whereas, under the relevant subsections of the aggravated assault statute the victim must apprehend and fear the imminent harm. The reckless endangerment statute therefore forbids and punishes activities that society views as dangerous, independent from a victim's characterization or even perception of the threat. We conclude that the defendant's wielding the shotgun in this case constituted such an activity.

Comparable with reckless endangerment, certain simple assaults and aggravated assaults require imminence, in the context of the victim's reasonable fear of bodily injury, see Tenn. Code Ann. §§ 39-13-101(a)(2), –102. Display of a firearm in a threatening context, even without the weapon actually being pointed at a victim, has been found sufficiently indicative of imminence to support a conviction for aggravated assault. See State v. Christopher Max Hall, No. M1998-00180-CCA-R3-CD (Tenn. Crim. App. filed March 23, 2000, at Nashville); State v. Gregory Whitfield, No. 02C01-9706-CR-00226 (Tenn. Crim. App. filed May 8, 1998, at Jackson). In the instant case, the testimony established that the defendant, in a heated argument and apparently after consuming intoxicants, loaded a firearm and pointed it at a minor. He kept the weapon pointed at her father, the victim, when that victim put himself between the muzzle of the weapon and his daughter. Then, as the victim fled, the weapon was discharged. Further, the weapon was a shotgun, a firearm that generally fires multiple projectiles in a roughly circular pattern at short distances, like the short distance involved in the instant case. At short range, this weapon requires a less precise targeting than other conventional firearms and is especially lethal. One short stroke of a trigger, in anger or in accident, would have sent the projectiles at the victim. Such a situation and its dire consequences were imminent and on the very edge of occurrence. Under these circumstances, such threat can not

be condoned in our society and, we conclude, falls under the breadth of this statute. Therefore, the evidence was sufficient to prove the offense beyond a reasonable doubt.[2]

The defendant's arguments also imply that John Russell, his friend who brought him the shotgun, actually fired that weapon. Since firing of the weapon was not requisite to conviction, our analysis disposes of this particular concern, but we note the evidence in the record: After making gestures of firing an imaginary weapon at the Taylors, the defendant requested the weapon, loaded it himself, pointed it at Lakisha and Irving Taylor, and, as the family members fled, the weapon discharged. A rational trier of fact could conclude, beyond a reasonable doubt, that the defendant fired the weapon.

## CONCLUSION

We affirm the conviction from the trial court.

—————————————————————
JOHN EVERETT WILLIAMS, JUDGE

---

[2] Our prior discussion regarding imminence notes the significance of our statute's comprising that requirement, contrasted with the Model Penal Code's omission of such requirement. In a similar vein, the Model Penal Code expressly states that the elements of the offense may be constituted by pointing a firearm, loaded or unloaded, at a victim. This definition of the offense is somewhat broader than our statute, and our holding does not extend to unloaded weaponery. We also note that in State v. Thomas R. Baldwin, No. 01C01-9612-CR-00530 (Tenn. Crim. App. filed July 29, 1998, at Nashville), this Court did not find reckless endangerment established by the defendant's firing a weapon a moment before at another victim in another direction. That opinion did not address the defendant's subsequent pointing of the firearm, without firing, at the first victim. See id.