IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2006

## STATE OF TENNESSEE v. JOHNNY C. MENIFEE

**Appeal from the Circuit Court for Maury County**
**No. 13869, 13870     Stella Hargrove, Judge**

---

**No. M2005-00708-CCA-R3-CD - Filed July 7/31/06**

---

The Appellant, Johnny C. Menifee, was convicted by a Maury County jury of Class D felony evading arrest with risk of injury, misdemeanor theft, Class E felony reckless endangerment with a deadly weapon, and resisting arrest following his involvement in a car theft and resulting police high-speed chase. Menifee was subsequently sentenced to an effective eighteen-year Department of Correction sentence. On appeal, Menifee raises two issues for review: (1) whether the evidence is sufficient to support his convictions; and (2) whether his dual convictions for felony evading arrest and felony reckless endangerment violate double jeopardy. Following review, we affirm the convictions.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Claudia S. Jack, District Public Defender and Shipp R. Weems, Assistant Public Defender, Columbia, Tennessee, for the Appellant, Johnny C. Menifee.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Mike Bottoms, District Attorney General; and Daniel Runde, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On April 22, 2003, Elizabeth Fox drove her 1998 Ford Mustang onto the Kroger parking lot and entered the Farmer's and Merchant's Bank, leaving the keys in her car. Fox was in the bank only briefly and, upon returning to her car, found it missing. She reported the theft to the Columbia Police Department, and a BOLO was issued to all officers, which included the car's license plate number.

Moments later, Sergeant Blair and Officer Shannon of the Columbia Police Department were refueling their patrol cars when Blair observed a 1998 silver Mustang drive by and noted that a portion of the license plate number matched that of the vehicle reported stolen. Blair was able to catch up with the Mustang and confirmed that the license plate number was the same as reported stolen. He observed a black male as the driver and the sole occupant of the Mustang. However, pursuant to police department procedure, Blair did not activate his emergency equipment until other officers were in position as backup. As the Appellant drove the Mustang onto the shopping center parking lot at Columbia Plaza, Blair noticed that Officer Shannon had arrived and had positioned his patrol car to block an exit of the shopping center. At this point, Blair proceeded to activate his blue lights and sirens. The Appellant refused to stop and proceeded through the parking lot at a high rate of speed, veering towards Shannon's patrol car, and, only at the last minute, swerving to avoid hitting the car. The Appellant exited Columbia Plaza onto 7th Street, still being pursued by Sergeant Blair.

As the Appellant proceeded down 7th Street, he reached speeds of approximately one hundred miles per hour in an area where the posted speed limit was thirty miles per hour and veered into lanes of oncoming traffic to avoid being stopped at a traffic signal. As the Appellant approached the intersection of 7th Street and Garden Street, he swerved back into his own lane, but he then attempted to drive through an area reserved for parallel parking, striking a 1992 GEO Metro before crashing into a utility pole and coming to a stop.

Witnesses, including Blair, observed that only one person, the Appellant, exited the vehicle and fled on foot. Nonetheless, upon exiting his patrol car, Blair checked the Mustang to make sure that no other occupants were inside. He then pursued the Appellant on foot. Officer Shannon, who had arrived on the scene as the foot chase began, proceeded down the street in his patrol car, keeping pace with the Appellant and Blair. Several times, Shannon used his loud speaker to tell the Appellant to stop. The Appellant continued his flight on foot, at one point jumping over two parked patrol cars. Eventually, Shannon and another officer who had arrived on the scene managed to drive ahead and cut off the Appellant's escape route. After the police encountered the Appellant, he struggled with the officers as they attempted to handcuff him. Eventually, the officers succeeded in handcuffing the Appellant and placed him in Shannon's patrol car. After being placed in the patrol car, the Appellant spat blood, saliva, and mucus upon Officer Shannon and banged his head against the door and window, yelling obscenities at the officers.

In June 2003, two multi-count indictments were returned by a Maury County grand jury charging the Appellant with various crimes stemming from the criminal episode. In case number 13869, the Appellant was charged with driving on a revoked license, leaving the scene of an accident, reckless endangerment, evading arrest creating a risk of death or injury, and theft over $1,000 but less than $10,000. In case number 13870, the Appellant was charged with reckless endangerment by motor vehicle, assault, evading arrest, and resisting arrest. Prior to trial, the charges of driving on a revoked license, leaving the scene of an accident, reckless endangerment, and evading arrest were dismissed by the State. The remaining charges, namely evading arrest creating a risk of death or injury, theft over $1,000 but less than $10,000, reckless endangerment by motor

vehicle, assault, and resisting arrest, were consolidated for trial on November 4, 2004. At trial, the Appellant testified and denied any involvement in the crimes, asserting that he simply was a passenger in the car, which he claimed had been stolen by a man he had previously worked with who had given him a ride. Following the presentation of evidence, the jury convicted the Appellant of evading arrest with risk of death and injury, misdemeanor theft, reckless endangerment with a deadly weapon, and resisting arrest.

At a subsequent January 4, 2005 sentencing hearing, the State introduced evidence of the Appellant's extensive criminal history, spanning over two decades. The Appellant testified and again proclaimed his innocence in the crimes. The trial court sentenced the Appellant, as a Range III offender, as follows: (1) twelve years for Class D felony evading arrest; (2) six years for Class E felony reckless endangerment; (3) eleven months and twenty-nine days for misdemeanor theft; and (4) six months for resisting arrest. The court further ordered that the two felony convictions were to be served consecutively, resulting in an effective sentence of eighteen years in the Department of Correction. Following the denial of his motion for new trial on February 22, 2005, the Appellant filed the instant appeal.

**Analysis**

On appeal, the Appellant has raised two issues for our review. First, he asserts that the evidence presented was insufficient to support his four convictions. Additionally, he argues that his convictions for Class D felony evading arrest and Class E felony reckless endangerment violate double jeopardy.

## I. Sufficiency of the Evidence

First, the Appellant asserts that "under the circumstances of this case . . . the evidence does not justify the guilty verdicts which were returned by the jury." Other than a recitation of relevant sufficiency law, the Appellant's entire argument on appeal is as follows:

> The [Appellant] contends that the evidence is not sufficient to convict him of evading arrest with risk of death and injury, theft, reckless endangerment with a motor vehicle, and resisting arrest. The [Appellant] testified that he was not the driver of this automobile and fled on foot only because he panicked when he saw police coming for him.

In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility

of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

As noted, the Appellant's entire sufficiency argument is premised upon his assertion that the proof failed to establish his identity as the perpetrator of the crimes charged. The Appellant testified at trial that he was walking down the road when a friend, whom he knew only as Bobby, stopped and offered him a ride in the Mustang. According to the Appellant, Bobby refused to stop the car when the police began pursuit, despite the Appellant's urging him to do so. He further stated that it was Bobby who crashed the car into the pole prior to fleeing from the car. The Appellant stated that he exited the Mustang through the driver side door because the passenger door was jammed and that he ran because he was afraid that the police would beat him.

While the identity of the perpetrator is an essential element of the offense which must be proven beyond a reasonable doubt, *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975), the Appellant's argument fails to recognize that the jury, as the trier of fact, was free to reject his testimony that he was not the driver of the car based upon a credibility determination. Also, the Appellant fails to acknowledge that his testimony that another person was present in the car was contradicted by several eyewitnesses who testified that the Appellant was the sole occupant of the vehicle. Clearly, based upon the guilty verdicts, the jury rejected the Appellant's testimony that he was not the driver of the car. The credibility of a witness is a factual issue to be resolved by the trier of fact, and we will not reweigh or reevaluate such determinations on appeal. *Cabbage*, 571 S.W.2d at 835. From the facts presented, a jury could have concluded that the Appellant was the perpetrator of the crimes for which he was convicted.

The Appellant was convicted of evading arrest with risk of death and injury. The offense of evading arrest occurs when "any person, while operating a motor vehicle on any street, road, alley or highway in this state, . . . intentionally flee[s] or attempt[s] to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1) (2003). While defined as a Class E felony, the offense is a Class D felony if "the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties . . . ." *Id*. at (b)(3). For such Class D felony convictions, all that need be shown is that the defendant evaded arrest and that, in doing so, he created the risk of death or injury. *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999). Here, both Blair and Shannon testified that the emergency equipment of their patrol cars was activated as they pursued the Appellant down 7th Street during the high speed chase. The Appellant himself acknowledged that they were involved in a high-speed chase and that he was aware that the police were trying to stop the Mustang. Clearly, there can be no dispute that the Appellant was attempting to elude arrest. Moreover, it is clear that the Appellant's flight created a risk of death or injury to others. The officers testified that the Appellant was driving down a busy street in a thirty-mile per hour zone, at one hundred miles per hour, weaving in and out of traffic, even driving into oncoming traffic to avoid being stopped at a traffic light. The proof established that prior to crashing into a pole, the Appellant's vehicle struck a GEO Metro, which had stopped for a red light. Clearly, the Appellant created a risk of death or injury to every motorist on the roadway which he encountered, in addition to the driver of the GEO Metro. The evidence presented is sufficient to support this conviction.

The Appellant was also convicted of Class E felony reckless endangerment with a deadly weapon. Reckless endangerment is committed when a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a) (2003). While it is generally a Class A misdemeanor, it becomes a Class E felony when committed with a deadly weapon. *Id*. at (b). Tennessee Code Annotated section 39-11-302(c) (2003) states that:

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

For the threat of death or serious bodily injury to be "imminent," the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger. *Payne*, 7 S.W.3d at 28. The "zone of danger" is "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." *Id*. Additionally, in order to convict an accused of reckless endangerment, "the State must show that a person or class of persons were in an area in which a reasonable probability of danger existed." *Id*. Viewing the evidence in the light most favorable to

the State, we conclude that the evidence is sufficient to support the conviction. Officer Shannon testified that the Appellant drove his car directly at the patrol car Shannon occupied and swerved only at the last minute, narrowly missing the car. The fact that serious injury was not inflicted as a result of the Appellant's actions is irrelevant to the offense. *State v. Baggett*, 836 S.W.2d 593, 595 (Tenn. Crim. App. 1992).

Though the Appellant was charged with theft of property valued at more than $1,000 but less than $10,000, the jury convicted the Appellant of misdemeanor theft. Tennessee Code Annotated section 39-14-103 (2003) provides, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Theft of property is a Class A misdemeanor if the value of the property is $500 or less. T.C.A. § 39-14-105(a) (2003). Elizabeth Fox testified that her 1998 Ford Mustang was taken from the Kroger parking lot without her consent. Fox further testified that she had purchased the car approximately one year earlier for $8,500. Moments after the car was reported stolen, the Appellant was seen driving the car, which he eventually crashed into a pole. Though no witness actually saw the Appellant steal the car, there is strong circumstantial evidence, based upon his immediate possession of recently stolen property, that the Appellant was the thief. Clearly, the jury, though rejecting the victim's asserted value, found proof that the Appellant committed the theft. Accordingly, we conclude that the proof is legally sufficient to support the Appellant's conviction for misdemeanor theft.

Lastly, the Appellant was convicted of resisting arrest. Resisting arrest is defined as follows:

> It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer.

T.C.A. § 39-16-602 (2003). "'Force' means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title[.]" T.C.A. § 39-11-106(12) (2003). Both Blair and Shannon testified that the Appellant resisted their efforts and the efforts of other officers who had arrived to handcuff the Appellant. Blair testified that the Appellant repeatedly pulled away, tried to get his hands underneath him, and pushed off the ground in order to avoid being cuffed. Blair further stated that it was a considerable struggle to actually accomplish handcuffing the Appellant. Clearly, this proof supports a conviction for resisting arrest.

## II. Double Jeopardy

Next, the Appellant argues that his dual convictions for Class D felony evading arrest with risk of death or injury and Class E felony reckless endangerment violate the principles of double jeopardy. The Appellant specifically asserts that a violation of double jeopardy occurred because both offenses were established by the Appellant's actions in a continuous high-speed flight from officers and the resulting risks to drivers on the roadway.

Both our federal and state constitutions prohibit persons from being "twice put in jeopardy" for the same offense. U.S. CONST. amend. V; Tenn. Const. art. I, § 10. "This prohibition against double jeopardy provides protection from three evils: (1) a second prosecution after an acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense." *State v. Franklin*, 130 S.W.3d 789, 797 (Tenn. Crim. App. 2003) (citing *Lewis*, 958 S.W.2d at 738). The issue before us relates to the last of the three categories as the Appellant contends that the two convictions resulted from the same act, *i.e.*, the high-speed chase.

In *State v. Denton*, our supreme court recognized that "[t]he key issue in multiple punishment cases is legislative intent." *State v. Denton*, 938 S.W.2d 373, 379 (Tenn. 1996). In other words, the court must determine whether the legislature intended that each violation resulting from a single act be a separate offense. Presumptively, "the legislature does not ordinarily intend to punish the same offense under two different statutes." *Id.* In *Denton,* the court set out a four-part balancing inquiry which is to be utilized in determining whether a defendant has received multiple punishments for the same act in violation of the principles of double jeopardy. *Id.* at 379-81; *see also State v. Goodwin*, 143 S.W.3d 771, 781 (Tenn. 2004). First, the reviewing court must determine whether each offense requires proof of an element that the other does not in accordance with *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932). *Denton*, 938 S.W.2d at 379. Second, the court must look to the specific evidence offered in the case to determine whether different evidence was used to prove each separate offense. *Id.* at 380. Next, the court is to consider whether there were multiple victims or multiple episodes. *Id.* at 381. Finally, the court must examine the purposes of the respective statutes prohibiting the defendant's conduct and determine whether the statutes serve different purposes. *Id.* at 381. No one factor in this test is determinative; rather, the court must balance all factors in relation to each other. *Id.*

Applying the test to the case at hand, we must first determine whether each offense requires proof of an element the other does not. *See Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182. As previously noted, Class E felony reckless endangerment is "recklessly engag[ing] in conduct which places or may place another person in imminent danger of death or serious bodily injury . . . committed with a deadly weapon." T.C.A. § 39-13-103(a), (b). Class D felony evading arrest is committed while "operating a motor vehicle on any street, road, alley or highway in this State, . . . [and] intentionally flee[ing] or attempt[ing] to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop . . . [and] the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties . . . ." T.C.A. § 39-16-603(b)(1), (3). Thus, reckless endangerment requires a deadly weapon, while evading arrest requires the use or operation of a motor vehicle. *Id.*; *see also State v. Jimmy Lee Cullop, JR.*, No. E2000-00095-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Apr. 17, 2001). Additionally, evading arrest requires flight or an attempt to elude a law enforcement officer upon a signal to stop. *Id.* Thus, there is not an identity of elements, and the offenses pass *Blockburger* scrutiny. *Cullop*, No. E2000-00095-CCA-R3-CD.

Next, we examine the specific evidence offered by the State to determine whether different evidence was used to establish each offense. As noted, the Appellant was convicted of Class D

felony evading arrest. With regard to this conviction, the proof established that the Appellant, while still attempting to elude Blair's pursuit, sped down 7th Street at high rates of speed, swerving and veering through lanes of moving traffic. Moreover, at the intersection of 7th and Garden Streets, the Appellant swerved into an area reserved for parallel parking, hitting a 1992 GEO Metro driven by Robert Hardison who had stopped at the traffic signal. With regard to felony reckless endangerment, the proof established that the Appellant, while operating his vehicle in the parking lot of the shopping center, intentionally swerved his vehicle toward Officer Shannon's parked car, narrowly missing it. Thus, clearly, each of the two offenses was established by separate proof. We do not dispute that the Appellant's acts were all committed within a single criminal episode; however, this is not the determinative test for double jeopardy. The record before us demonstrates that the proof established the existence of separate and distinct acts of Class D felony evading arrest and felony reckless endangerment which were separated by time, location, and *actus reas*.

Third, we address the question of whether the dual convictions involved multiple victims within the single criminal episode. As opposed to *Cullop,* which is relied upon by the Appellant, this case, as noted *supra*, involved multiple victims and distinct episodes of conduct constituting the separate offenses. In contrast, *Cullop* involved evidence of multiple drivers on the road, but the charging instrument and the proof offered to support both offenses centered on "others" generally, as opposed to specific or different individuals who were placed at risk by the defendant's conduct. *Cullop*, No. E2000-00095-CCA-R3-CD. Here, with regard to felony evading arrest, the State presented proof of specific identified victims placed at risk, in addition to those unidentified motorists who were shown to be traveling on 7th Street. Specifically, Robert Hardison testified that he was stopped at a stop light in his car when the Appellant crashed into him. Additionally, Sarah Bolin testified that she was at the stop light when the Appellant swerved through the traffic and plowed into the pole next to her. Moreover, with regard to the felony reckless endangerment charge, Officer Shannon testified that the Appellant drove directly at his parked patrol car, swerving only at the last minute and narrowly missing him. Thus, by presenting distinct proof of acts against specific victims, the State established that this was not one continuous episode; rather, the proof established discrete acts and separate victims which were capable of being separated into multiple offenses. *Cf. Cullop*, No. E2000-00095-CCA-R3-CD;[1] *State v. Ramsey*, 903 S.W.2d 709, 713 (Tenn. Crim. App. 1995).

Finally, we hold that the purposes of the reckless endangerment and felony evading arrest statutes are not the same. *See Cullop*, No. E2000-00095-CCA-R3-CD (Tipton, J., concurring in part and dissenting in part) (holding that the legislature did not intend the offenses of felony reckless endangerment and felony evading arrest to be viewed as the same offense for double jeopardy purposes). The crime of evading arrest, which is codified in Chapter 16, Offenses Against Administration of Government, Part 6, Obstruction of Justice, legislatively addresses the threatened

---

[1]We note that the Appellant also relies upon the case of *State v. Brandon Patrick*, No. E2003-02382-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Mar. 8, 2005). The facts of *Patrick* are virtually identical to those in *Cullop*, and the same analysis was employed. However, that case was designated "not for citation." Cases bearing such designation are not persuasive authority under Tenn. R. Sup. Ct. 4(H)(1).

harm "to . . . the public interest" of obstructing a law enforcement officer in the discharge of any legal duty. *See* T.C.A. § 39-11-101(1) (2003); T.C.A. § 39-16-603(b)(5). The aggravated form of evading arrest, T.C.A. § 39-16-603(b)(3), addresses the public harm when the act of evading arrest creates a risk of death or injury to innocent bystanders or other third parties. On the other hand, the crime of reckless endangerment is codified in Chapter 13, Offenses Against the Person, Part 1, Assaultive Offenses, and legislatively addresses threatened harm "to the individual . . . [,]" T.C.A. § 39-11-101, by prohibiting conduct which may place another person in danger of death or serious bodily injury with a deadly weapon. T.C.A. § 39-13-103(b). Accordingly, we conclude that the respective harms underlying the two crimes are distinguishable in purpose.

Upon consideration of the above factors, we conclude that double jeopardy does not bar dual convictions for Class D felony evading arrest and Class E felony reckless endangerment upon the facts of this case. In so concluding, we place great weight upon the proof that the crimes involved separate victims and that the State introduced evidence of distinct criminal acts defining the two offenses.

## CONCLUSION

Based upon the foregoing, the judgments of conviction are affirmed.

_____
DAVID G. HAYES, JUDGE