# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 25, 2011 at Knoxville

## STATE OF TENNESSEE v. CANTRELL LASHONE WINTERS

**Appeal from the Criminal Court for Davidson County**
**No. 2008-F-1674      Steve Dozier, Judge**

---

**No. M2009-01164-CCA-R3-CD - Filed March 24, 2011**

---

A Davidson County Criminal Court jury convicted the defendant, Cantrell Lashone Winters, of possession of 50 grams or more of hydromorphone in a school zone with intent to sell or deliver, a Class A felony, *see* T.C.A. §§ 39-17-417(a)(4), (j)(3); 39-17-432(b) (2006), and evading arrest, a Class D felony in this case, *see id.* § 39-16-603(b)(1), (3).  In this appeal, the defendant challenges the trial court's denial of his motion to suppress evidence obtained during the search of his person following his arrest, the trial court's denial of his request for substitute counsel, the admission of expert testimony on illegal drug packaging, the sufficiency of the convicting evidence, and the trial court's denial of his petition for writ of error coram nobis.  Because the evidence adduced at trial does not establish that the defendant created a risk of death or injury, his conviction of Class D felony evading arrest must be modified to Class E felony evading arrest.  The judgments of the trial court are otherwise affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed as Modified**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Dumaka Shabazz (on appeal and at motion for new trial), Nashville, Tennessee; and Mike Engle, Assistant District Public Defender (at trial), for the appellant, Cantrell Lashone Winters.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee

# OPINION

On September 7, 2006, Metropolitan Nashville Police Department ("Metro") Flex Unit patrol officer Shane Fairbanks was patrolling an area in East Nashville when he observed the defendant driving a Toyota Camry toward the intersection of Greenwood Avenue and Scott Avenue. According to Officer Fairbanks, the defendant was not wearing his seatbelt. Officer Fairbanks stopped the Camry and obtained identification from the defendant and his passenger, Ollis Welch, Jr. Officer Fairbanks testified that as he spoke with the defendant, he smelled marijuana and that, as a result, he asked the defendant if the men had any marijuana in the car. When the men responded that they did not, Officer Fairbanks "opened the driver's door and told [the defendant] to step out." At that point, the defendant told Officer Fairbanks to "hold on." The defendant then "grabbed the door, pulled it back shut. At the same time, he put the car in gear and sped away." According to Officer Fairbanks, the defendant "blasted right through" a nearby four-way stop sign. Officer Fairbanks conceded that there were no other persons or cars in the area when the defendant fled in the Camry.

Officer Fairbanks lost sight of the Camry as he got into his patrol car to follow, but he caught the car a short distance later. At that point, the Camry slowed to a stop, and both men got out of the car and laid on the ground. Searches of both men and the vehicle failed to yield any contraband. Officers did discover $10,220 on the defendant's person, $5,000 of which the defendant had stuffed "in between the fleshy part of his buttocks." Mr. Welch had $5,114 in his possession. Other officers who searched along the route traveled by the Camry discovered "a sandwich bag" containing "several small yellow pills" in a tomato patch.

Other evidence established that the route taken by the Camry passed within 1,000 feet of both Bailey Middle School and Rosebank Elementary School. Tennessee Bureau of Investigation testing established that the sandwich bag contained 1,413 hydromorphone tablets manufactured by Abbott Laboratories and that the weight of the hydromorphone was 127.1 grams.

Metro Lieutenant William Mackall testified as an expert in illegal narcotics trafficking that the packaging of the hydromorpone tablets in this case into smaller, bagged quantities of 50 to 100 pills indicated that they were intended for sale to intermediate level drug sellers rather than street level drug consumers. Lieutenant Mackall explained that a street level user typically purchased less than four pills. He also explained that the average street price for a hydromorphone tablet at the time of the offenses was $15.

Ollis Welch, Jr., testified on behalf of the defendant that on September 7, 2006,

he and the defendant were driving to Mr. Welch's mother's house when they were stopped by Officer Fairbanks. He said that the defendant, who had warned Mr. Welch that he might "have to take off" from the officer, sped away after Officer Fairbanks asked him to step out of the car. Mr. Welch said that as they drove away, he noticed for the first time a plastic bag containing a large number of pills. He said that he "grabbed" the bag and threw it out the window. Mr. Welch, who acknowledged that he knew the defendant to be a drug dealer, denied placing the pills in the car and disclaimed any ownership in the contraband.

Based upon this proof, the jury convicted the defendant as charged of possession with intent to sell or deliver 50 grams or more of hydromorphone in a school zone and Class D felony evading arrest. Following a sentencing hearing, the trial court imposed a total effective sentence of 34 years, 25 years of which was to be served at 100 percent by operation of law. *See* T.C.A. § 39-17-432(c).

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal to this court. In this appeal, the defendant challenges the trial court's denial of his pretrial motion to suppress evidence obtained during the search of his vehicle and his person following his arrest; the trial court's pretrial denial of his bid to have his appointed counsel replaced; the trial court's permitting Lieutenant Mackall to testify as an expert; the sufficiency of the convicting evidence; and the trial court's denial of his petition for writ of error coram nobis. We will examine each claim in turn.

*I. Motion to Suppress*

The defendant claims that the trial court erred by denying his motion to suppress evidence seized from his person and from his vehicle following his arrest because the State failed to establish that Officer Fairbanks had reasonable suspicion to conduct the initial investigative stop. The State contends, and we agree, that the defendant has waived our consideration of this issue by failing to include a transcript of the suppression hearing in the record on appeal.

The appellant bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which includes the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). If the appellant fails to file an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). In the absence of the suppression hearing transcript, we are without the facts upon which the trial court relied to make its ruling. Although we are instructed to consider any evidence adduced at trial when reviewing the trial

court's ruling on a motion to suppress, *see State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998), the consideration of such evidence should be done as a complement to the evidence from the suppression hearing and not as a replacement for such evidence. Given this deficiency in the record, review of the trial court's denial of the defendant's motion to suppress is impossible, and we must presume that the trial court's ruling was correct.

## II. Motion to Remove and Replace Appointed Counsel

In September 2007, the defendant, via his appointed counsel, moved the court to relieve appointed counsel and appoint substitute counsel. The defendant claimed that appointed counsel had "not timely accomplished those tasks which [the defendant] believe[d] to be essential to the preparation of his case," that counsel had "not kept [the defendant] apprised of the status of his three cases," and that appointed counsel "displease[d] him in several other ways that his attorney d[id] not even understand." The trial court denied this motion following a hearing, the transcript of which is not included in the appellate record. The defendant apparently renewed his motion orally both prior to trial and during jury voir dire. Neither the oral motions nor the trial court's ruling on them are included in the appellate record. Again, without these transcripts we are without the most basic of facts upon which to conduct our analysis, and, as a result, we must presume that the ruling of the trial court was correct. *See Richardson*, 875 S.W.2d at 674.

Moreover, although appellate counsel has prepared four pages of argument on this issue, he has failed to cite a single relevant case. The entire argument is devoted to the repercussions of the complete deprivation of counsel by the trial court, which clearly did not occur in this case. Despite raising the issue in his motion for new trial and calling trial counsel as a witness at the hearing on the motion for a new trial, the defendant specifically "does not challenge the effectiveness of his appointed counsel" on appeal. Other than his bald assertion that the trial court should have granted his motion for substitute counsel, which is completely unsupported by relevant authority, the defendant makes no specific claim of error occasioned by the trial court's failure to grant the motions. Under these circumstances, the defendant has waived our consideration of this issue. *See* Tenn. Ct. Crim. App. R. 10(b).

## III. Expert Testimony

The defendant also contends that the trial court erred by permitting Lieutenant Mackall to testify as an expert in narcotics trafficking because the State failed to establish that his testimony would substantially assist the trier of fact. The State asserts that the defendant waived this issue by failing to object to Lieutenant Mackall's testimony on grounds that he was not qualified to render an expert opinion.

-4-

Initially, we do not agree with the State that the defendant has waived our consideration of this issue. The record establishes that prior to Lieutenant Mackall's testimony, defense counsel objected to the testimony on the basis that it was irrelevant and that it would not substantially assist the trier of fact in determining whether the defendant possessed the hydromorphone for sale or delivery. Counsel specifically stated that the defendant was making no claim that the drugs were possessed for personal use and conceded that the pills were obviously packaged for resale. The trial court overruled the defendant's objection and permitted Lieutenant Mackall to offer expert testimony. In this appeal, the defendant again complains that Lieutenant Mackall's expert testimony did not substantially assist the trier of fact and does not, as the State contends, challenge Lieutenant Mackall's qualification to render such an opinion.

The admissibility of expert testimony is governed by Rules 702 and 703 of the Tennessee Rules of Evidence. *See generally McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257 (Tenn. 1997). Rule 702 addresses the need for expert testimony and the qualifications of the expert: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 focuses on the reliability of expert opinion testimony. Generally, the admissibility of expert testimony is a matter entrusted to the sound discretion of the trial court, and there can be no reversal on appeal absent clear abuse of that discretion. *See State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2010); *State v. Copeland*, 226 S.W.3d 287, 301 (Tenn. 2007). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Scott*, 275 S.W.3d at 404 (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

This court has previously held that when the State establishes that an officer possesses the necessary training, experience, and familiarity with the illicit drug trade, the officer may testify about matters relating to the business of buying, selling, trading, and use of illegal drugs pursuant to Rule 702 of the Tennessee Rules of Evidence. *See State v. Bruce Elliot*, No. M2008-02686-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Nashville, Apr. 9, 2010); *see also, e.g.*, *State v. Gayle Thomas Crawford*, No. W2009-00263-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Jackson, Oct. 7, 2009); *State v. Daniel Potin*, W2005-01100-CCA-R3-CD, slip op. at 5-6 (Tenn. Crim. App., Jackson, June 7, 2006), *perm. app. denied* (Tenn. Nov. 13, 2006); *State v. Samuel L. Giddens*, No. M2002-00163-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Nashville, Nov. 15, 2004); *State v. Timothy Murrell*, No. W2001-02279-CCA-R3-CD, slip op. at 7-9 (Tenn. Crim. App., Jackson, July 2, 2003). Here, the State established that Lieutenant Mackall possessed the requisite training

and experience to provide expert testimony on narcotics trafficking, and the defendant does not challenge that qualification. Instead, the defendant contends that the testimony was inadmissible because it did not "substantially assist the trier of fact" in determining any issue of fact. We disagree.

To obtain a conviction in this case, the State was required to prove that the defendant possessed the 1,413 hydromorphone pills for sale or delivery. Because Lieutenant Mackall's testimony addressed this issue directly, it was relevant. *See* Tenn. R. Evid. 401. Moreover, despite defense counsel's concession during the bench conference that the defendant was making no claim that the drugs were possessed for any reason other than resale, the defendant made no such concession in front of the jury. Even if he had, however, the State was still entitled to prove its case. *See State v. Robinson*, 146 S.W.3d 469, 491 (Tenn. 2004) (observing that "the prosecution's right to prove its case . . . may not be foreclosed by a defendant's characterization of the proof as undisputed or by a defendant's offer to stipulate or concede certain factual issues"). Lieutenant Mackall's testimony regarding the illicit sale of hydromorphone tablets most certainly informed the jury's determination whether the defendant possessed the hydromorphone tablets for resale. In consequence, the trial court did not abuse its discretion by admitting the testimony.

*IV. Sufficiency*

The defendant also contends that the evidence adduced at trial was insufficient to support his convictions. We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

Recently, our supreme court adopted the position of the United States Supreme Court "that direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Genaro Dorantes*, No. M2007-01918-SC-R11-CD, ___ S.W.3d ___, slip op. at 11 (Tenn. Jan. 25, 2011). In *Dorantes*, the supreme court specifically rejected the holding in *State v. Crawford*, 470 S.W.2d 610 (Tenn. 1971), requiring that in a wholly circumstantial evidence case the State "prove facts and circumstances 'so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt.'" *Id.*, slip. op at 10 (quoting *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971)). Accordingly, the State is no longer required to "exclude every other reasonable hypothesis save the guilt of the defendant" to

-6-

obtain a conviction based solely on circumstantial evidence and need only establish the constitutionally required standard of proof beyond a reasonable doubt. *Genaro Dorantes*, slip op. at 12.

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

*A. Possession with intent to sell or deliver 50 grams or more of hydromorphone*

"It is an offense for a defendant to knowingly . . .[p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4) (2006). Hydromorphone is a Schedule II controlled substance. *Id.* § 39-17-408(b)(1)(L). The term "possession" embraces both actual and constructive possession. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). To "constructively possess" a drug, a person must have "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Id.* (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). Additionally, "it may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-17-419. Finally, where the State establishes that the violation of subsection 417 "occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school [or] middle school," the defendant is subjected to a higher offense classification, a greater fine, and a minimum mandatory sentence. *See id.* § 39-17-432.

The evidence adduced at trial established that Officer Fairbanks stopped the defendant's vehicle after observing that the defendant was not wearing his seatbelt. During the traffic stop, Officer Fairbanks detected an odor of marijuana and, as a result, asked the defendant to step out of the car. Instead of heeding the officer's directive, the defendant closed the car door and drove away. Officer Fairbanks caught up with the defendant's vehicle a short distance away, and the defendant stopped the car and surrendered to the officer. Officers searching along the route traveled by the defendant's car discovered a plastic bag containing some 1,413 hydromorphone tablets weighing 127.1 grams discarded

in a tomato patch. Officers found no other persons in the general vicinity of the bag, which lay directly below a bridge crossed by the defendant's car during the chase. Mr. Welch, the defendant's passenger and co-defendant, testified that he saw the bag containing the pills in the car after the defendant fled from the initial traffic stop. Although Mr. Welch admitted throwing the bag out of the window, he disclaimed any ownership in the drugs and asserted that he had seen the pills for the first time during the chase. Other evidence established that the defendant traveled within 1000 feet of two different schools as he fled from Officer Fairbanks. In our view, this evidence was sufficient to support the defendant's conviction of possession with intent to sell or deliver 50 grams or more of hydromorphone in a school zone.

## B. Class D Felony Evading Arrest

"It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1). Evading arrest by way of a motor vehicle is a Class E felony "unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony." *Id.* at (b)(3). This court has held that "[f]or such Class D felony convictions, all that need be shown is that the defendant evaded arrest and that, in doing so, he created the risk of death or injury." *State v. Johnny C. Menifee*, No. M2005-00708-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Nashville, July 31, 2006) (citing *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999)).

Here, Officer Fairbanks testified that after he ordered the defendant to step out of his vehicle, the defendant closed the door to the car and drove away. The officer did not testify as to the defendant's rate of speed as he left the area, and the officer caught up with the defendant's vehicle a short distance away despite the delay experienced as he returned to his cruiser. The officer acknowledged that although the defendant ran a stop sign, there were no other vehicles near the intersection and no bystanders along the route traveled by the defendant. Although the officer stated that the defendant was driving "fast," he did not testify that the defendant drove in an erratic manner that might have endangered the life of Mr. Welch as he traveled the two blocks before stopping his car a second time. The State failed to present any proof from which the jury could have concluded that the defendant created "a risk of death or injury to innocent bystanders or other third parties." Consequently the defendant's conviction of Class D felony evading arrest must be modified to a conviction of Class E felony evading arrest, *see* T.C.A. § 39-16-603(b)(3), and the case is remanded for resentencing as to this count alone.

-8-

## V. Writ of Error Coram Nobis

Finally, the defendant complains that the trial court erred by summarily dismissing his petition for a writ of error coram nobis. The State contends that summary dismissal was appropriate because the defendant actually presented at trial the same evidence he claimed in his petition to be "newly-discovered."

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Coram nobis relief is provided for in criminal cases by statute:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b) (2006); *see State v. Vasques,* 221 S.W.3d 514, 525 (Tenn. 2007).

> The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing.

*Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003).

"The writ of error [coram nobis] may be had within one (1) year after the judgment becomes final by petition presented to the judge at chambers or in open court, who

may order it to operate as a supersedeas or not." T.C.A. § 27-7-103 (2000); *see Mixon*, 983 S.W.2d at 670 (holding that a petition for a writ of error coram nobis is untimely unless it is brought within one year of the entry of the trial court's "final," or last, order; the time for filing is not extended by the pursuit of a timely direct appeal). The decision to grant or deny coram nobis relief rests within the sound discretion of the trial court. *Vasques*, 221 S.W.3d at 527-28.

Here, the defendant sought coram nobis relief on the basis of newly discovered evidence in the form of the transcript of Mr. Welch's guilty plea submission hearing and an affidavit from Mr. Welch purporting to claim full ownership of the defenestrated hydromorphone tablets. The trial court summarily dismissed the petition, concluding that neither the hearing transcript nor Mr. Welch's affidavit constituted newly discovered evidence. The record fully supports this conclusion.

The transcript of Mr. Welch's guilty plea submission and sentencing hearing does not qualify as newly discovered evidence because it was available to the defendant prior to his trial and was, in fact, utilized by defense counsel during his cross-examination of Mr. Welch. *See Arthur Stamey, III, v. State*, No. E2009-00996-CCA-R3-CD, slip op. at 7-9 (Tenn. Crim. App., Knoxville, Feb. 11, 2010) (holding that evidence does not qualify as newly discovered when it was available to defense counsel prior to trial). In addition, Mr. Welch's affidavit does not constitute newly discovered evidence because it is inadmissible hearsay. The rule requiring a coram nobis petitioner to establish that newly discovered evidence may have resulted in a different outcome "presupposes that the evidence (a) would be admissible pursuant to the applicable rules of evidence, and (b) is material to the issues or grounds raised in the petition." *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

Moreover, were we to consider Mr. Welch's affidavit as a recantation of his trial testimony that he did not possess the hydromorphone tablets prior to picking them up to throw them out the window, the defendant would not be entitled to relief. A new trial may be granted on the basis of a recantation only when:

> (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

*Mixon*, 983 S.W.2d at 673 n.17. Here, the only sworn testimony offered by Mr. Welch

occurred at the defendant's trial and at Mr. Welch's own guilty plea submission hearing. In his testimony at both proceedings, Mr. Welch admitted throwing the drugs out the window but denied having possessed them prior to doing so. In his "affidavit" attached to the petition for writ of error coram nobis, Mr. Welch states that he did, in fact, possess the drugs all along without the defendant's knowledge.[1] Furthermore, the defendant, who maintained all along that the drugs belonged to Mr. Welch, cannot establish that he "was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial" because, as indicated above, Mr. Welch's trial testimony was the same as that offered at his guilty plea submission hearing, the transcript of which was available to the defendant at his trial. In consequence, the trial court did not err by summarily dismissing the petition for writ of error coram nobis.

*Conclusion*

Because he failed to include in the appellate record the transcripts of the hearings on his motion to suppress and to replace his appointed counsel, the defendant has waived our consideration of those issues. Because Lieutenant Mackall's testimony was relevant and of substantial assistance to the trier of fact, the trial court did not err by permitting Lieutenant Mackall to testify as an expert in the field of illegal narcotics trafficking. The evidence adduced at trial was sufficient to support the defendant's conviction of possession with intent to sell or deliver 50 grams or more of hydromorphone in a school zone but was insufficient to establish that the defendant created a risk of death or injury to bystanders or other third parties when he fled from Officer Fairbanks, resulting in the defendant's conviction of Class D felony evading arrest being modified to Class E felony evading arrest. Finally, because the defendant failed to establish that Mr. Welch's unsworn affidavit and guilty plea submission hearing testimony qualified as newly discovered evidence, the trial court did not err by summarily dismissing his petition for writ of error coram nobis. Accordingly, the judgments of the trial court are affirmed as modified.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1]Although a page containing a notary signature and seal follows Mr. Welch's affidavit, nothing actually indicates that the notary signature and seal belong with the affidavit.