STATE of Tennessee, Appellee,

v.

Robert A. PAYNE, Appellant.

Supreme Court of Tennessee,
at Nashville.

Nov. 15, 1999.

Jeffrey A. Devasher, Assistant Public Defender, Nashville, J. Michael Engle, Assistant Public Defender, Nashville, Alan Calhoun, Assistant Public Defender, Nashville, for Appellant.

Michael E. Moore, Solicitor General, Ellen H. Pollack, Assistant Attorney General, Nashville, for Appellee.

## O P I N I O N

JANICE M. HOLDER, Justice.

We granted this appeal to determine whether the offense of reckless endangerment can be committed against the public at large. We conclude that reckless endangerment can be committed against the public at large but, to prove the charge, the State must show that a representative of that group was in an area in which a reasonable probability of danger existed. We affirm one conviction for reckless endangerment and hold that the evidence was insufficient to support the remaining charge of reckless endangerment. Accordingly, we vacate that conviction and modify the defendant's sentence to 46 years.

## BACKGROUND

Shortly after midnight on July 25, 1995, Sgt. Scott Robinson of the Metropolitan Police Department began following the defendant, Robert Anthony Payne, a.k.a. Anthony Jordan, after the defendant aroused the officer's suspicion. Robinson testified that the defendant's older model car seemed out of place at the "high dollar" Nashville hotel where Robinson first observed the defendant and the license tag on the car was registered to a newer model rental car. Robinson followed the defendant and awaited back-up before stopping him. The defendant stopped on his own, approached the officer, and demanded to know why he was being followed. He then jumped back into his car and led the officer on a high-speed chase through a residential neighborhood. During the chase, the defendant made a U-turn and drove his car into the path of Robinson's patrol car. Robinson took evasive measures to avoid a collision. The officer said he continued to pursue the defendant at speeds between 70 and 80 mph through the residential area until the defendant turned off his headlights. Robinson then terminated the pursuit because it had become too dangerous.

In the same neighborhood, four days later, the defendant again attracted the attention of law enforcement officers when he drove into an intersection and into the path of an officer. Officer Allen Finchum, who was patrolling the area, swerved to avoid hitting the defendant. Finchum turned on his blue lights to signal the defendant to stop. The defendant stopped, exited his car, approached the officer, and blamed the officer for speeding. The defendant was ordered back into his car to search for identification. When the defendant could find none, the officer ordered the defendant out of the car. The defendant refused and started the ignition. Finchum reached into the car and struggled with the defendant to prevent him from driving off. The defendant drove away with Finchum holding onto the car for a brief time before letting go. Finchum and Officer Dhana Jones, who was providing back-up assistance, entered their respective cars and pursued the defendant.

The defendant led the officers on a chase through the residential area, ignoring stop signs and exceeding the 30–mph

speed limit. Finchum testified that the chase occurred in a populated, residential area with people present on the sidewalks. The officers testified that twice the defendant made U-turns and drove straight at them. They had to swerve to avoid a collision. At another intersection, the defendant drove around a car stopped at a traffic light and continued driving. Finchum stated that he and Jones were traveling at speeds between 55 and 60 mph and could not keep up with the defendant. They lost sight of the defendant after he crested a hill. By the time they caught up to him, the collision had occurred.

Just prior to the collision, Noel Aihie was coming to a stop behind the victims' vehicle, which was signaling to turn left. He saw in his rearview mirror the defendant's approaching car. Aihie estimated that the defendant's car was traveling around 70 mph. Aihie moved his truck toward the right curb to avoid a collision. The defendant drove into the opposing lane for oncoming traffic just as the victim, Hattie Gray, was turning left. The defendant struck Gray's car on the driver's side. One of Ms. Gray's children, five-year-old Ashley Gray, died from a skull fracture. The second child, seven-month-old Jasmine Dartis, sustained a head injury, a broken leg, and abrasions. Ten-year-old James Gray sustained head and leg injuries. Ms. Gray sustained broken ribs, a broken pelvis, crushed ankles, a collapsed lung, and a head injury. She remained in a coma for seven days following the collision.

In connection with the July 25th incident, the jury convicted the defendant of aggravated assault of Officer Robinson and reckless endangerment for the threat caused by the pursuit. The jury convicted the defendant of vehicular homicide for the death of Ashley Gray, three counts of ag-gravated assault for injuring Hattie Gray and her other two children, and reckless endangerment for the threat caused by the pursuit in connection with the July 29th pursuit and accident. The defendant was ordered to serve sentences of 10 years for vehicular homicide, three 8–year sentences for aggravated assault of the members of the Gray family, a 10–year sentence for aggravated assault on an officer, and two 2–year sentences for reckless endangerment. The sentences were ordered to run consecutively for an effective sentence of 48 years.

## ANALYSIS

### Public at Large

■ We granted the defendant's application to decide whether the offense of reckless endangerment can be committed against the public at large.[1]

Tenn.Code Ann. § 39–13–103 defines reckless endangerment:

(a) A person commits an offense who recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury.

(b) When reckless endangerment is committed with a deadly weapon, the offense is a class E felony.

■ "Person" is defined as "the singular and the plural and means and includes any individual, firm, partnership, copartnership, association, corporation, governmental subdivision or agency, or other organization or other legal entity, or any agent or servant thereof." Tenn.Code Ann. § 39–11–106(27). While the statute requires that a person be placed in imminent danger, "imminent" is not defined in the

---

1. The defendant was indicted on two counts of reckless endangerment stemming from the two pursuits. The indictments allege that the defendant on July 25th and 29th:

in Davidson County, Tennessee and before the finding of this indictment, recklessly did engage in conduct which placed or which might have placed the public at large in imminent danger of death or serious bodily injury, said offense being committed with a deadly weapon, to wit: an automobile, in violation of Tennessee Code Annotated § 39–13–103, and against the peace and dignity of the State of Tennessee.

code. *Black's Law Dictionary* defines imminent as:

> Near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous. Something which is threatening to happen at once, something close at hand, something to happen upon the instant, close although not yet touching, and on the point of happening.

*Black's Law Dictionary* 750 (6th ed.1990). Therefore, for the threat of death or serious bodily injury to be "imminent," the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger. *See State v. Fox*, 947 S.W.2d 865, 866 (Tenn.Crim.App.1996). In *State v. Fox*, the Court of Criminal Appeals considered a defendant's discharge of a weapon into a tree and noted the importance of distinguishing the area in which a reasonable probability of harm exists from an area in which a mere possibility of harm exists. "This Court has previously recognized the potentially 'absurd' and 'unreasonable' results that may arise from permitting prosecution of one discharging 'a weapon under any circumstances where any other human being *might possibly* be present or where a stray bullet *might possibly* strike another person.'" *Id.* (emphasis added). The court found that simply discharging a gun into the air absent a showing that someone was threatened did not constitute reckless endangerment. *Id.* "The discharge must create an imminent risk of death or serious bodily injury to some person or class of persons." *Id.*

■ We hold that the term "zone of danger" may be employed to define that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area. We further hold that the term "public at large" may be used in an indictment for reckless endangerment to designate that class of persons occupying the "zone of danger." Accordingly, the indictment in the case now before us was not erroneous for employing the term "public at large." We will next examine the State's proof offered to establish the presence of an individual or group of individuals in the "zone of danger."

### Sufficiency of the proof

The State argues that it is not required to show that any individual was in the zone of danger created by the defendant. Under the State's view, the defendant's reckless behavior and the creation of the "mere possibility" of danger is sufficient. The State argues that Tennessee's statute is "virtually identical" to the Model Penal Code version whose language supports a broad interpretation. Tennessee's statute, however, requires that a person or class of persons be placed in "imminent danger." The Model Penal Code version does not include that requirement.[2] The original comments to the Model Penal Code state that there is no requirement for "any particular person to be actually placed in danger."

■ This requirement of imminent danger mandates that an individual or class of individuals be present in the zone of danger as defined by this opinion. The individuals need not be identified by name, but the State must show that a person or class of persons were in an area in which a reasonable probability of danger existed. We now consider whether the State made that showing in the defendant's case.

2. The *Model Penal Code's* version of reckless endangerment states:

> A person commits a misdemeanor if he recklessly engages in conduct which places or may place another in danger of death or serious bodily injury. Recklessness and

> danger shall be presumed where a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded. Model Penal Code § 211.2.

■ We must determine, after reviewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the defendant guilty of reckless endangerment beyond a reasonable doubt. Tenn. R.App. P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Cazes,* 875 S.W.2d 253 (Tenn.1994).

■ In connection with the July 25th pursuit, the proof demonstrated that Sgt. Robinson was the only individual threatened by the defendant's actions. That threat resulted in an aggravated assault conviction. Although Robinson testified that the pursuit involved speeds of between 70 and 80 mph and occurred in a residential area, there was no proof offered by the State that any member of the public was in the zone of danger at the time of the chase. The State could have met its burden by showing that at the time of the chase another motorist was driving on the street or that an individual was walking down the sidewalk. The State simply failed to show that anyone other than Robinson was located in the area in which a reasonable probability of death or seriously bodily injury existed. We conclude that the evidence does not support this conviction. The conviction for reckless endangerment involving the July 25th pursuit is therefore vacated.

■ As for the July 29th pursuit, the State's evidence established that at the time of the chase there were individuals who were placed in imminent danger of death or serious bodily injury. As the chase began, Officer Finchum clung to the defendant's car for a brief period before letting go. Finchum testified that during the chase the defendant aimed his car at Finchum and Jones at least once. Finchum also testified that people were present on the sidewalks in close proximity to the chase. Motorist Noel Aihie testified that he took evasive measures to move out of the way when he saw the defendant approaching at an excessive speed. Based upon this evidence, a rational trier of fact could have found beyond a reasonable doubt that a reasonable probability existed that the defendant's conduct placed representatives of the public at large who were within the "zone of danger" in imminent danger of death or serious bodily injury. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).[3]

## CONCLUSION

We conclude that the offense of reckless endangerment can be committed against the public at large if the proof demonstrates that members of the public were in such close proximity to the defendant that a reasonable probability of death or serious bodily injury existed. We affirm one conviction for reckless endangerment and hold that the evidence for the remaining charge of reckless endangerment was insufficient. Accordingly, we vacate that conviction and modify the defendant's sentence to 46 years. Costs of the appeal are to be shared equally between the defendant and the State, but, it appearing that

3. Because we have concluded that the offense of reckless endangerment can be committed against the public at large, it is not necessary to address the defendant's assertions that the indictment failed to give him adequate notice and that his right to a unanimous jury verdict was violated.

By naming "the public at large" in the indictment for reckless endangerment, the State chose to indict on behalf of a class of persons instead of on behalf of each victim of reckless endangerment. In connection with the July 29, 1999 chase, the State could have pursued multiple indictments for reckless en-

dangerment naming Officers Finchum and Jones, and motorist Noel Aihie as victims. By choosing to indict for a class of persons, the State is now prohibited from indicting for any additional offenses based upon the defendant's conduct at this time and place. *See State v. Byrd,* 820 S.W.2d 739, 741 (Tenn. 1991) (stating "an indictment or presentment must provide a defendant with notice of the offense charged, provide the court with an adequate ground upon which a proper judgment may be entered, and provide the defendant with protection against double jeopardy.").

the defendant is indigent, all costs of this appeal shall be taxed to the State.

ANDERSON, C.J., DROWOTA and BIRCH, J.J., and BYERS, Sp.J., concur.