# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2012

## STATE OF TENNESSEE v. GREG PATTERSON

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 8999     Joseph H. Walker, III, Judge**

---

**No. W2011-02101-CCA-R3-CD  -  Filed December 11, 2012**

---

A Lauderdale County Circuit Court Jury convicted the appellant, Greg Patterson, of felony reckless endangerment, and the trial court sentenced him to eighteen months to be served in community corrections. On appeal, the appellant contends that the evidence is insufficient to support the conviction. Based upon the record and the parties' briefs, we agree that the evidence is insufficient. Therefore, the conviction is reversed, and the original charge is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed**.

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ROGER A. PAGE, JJ., joined.

Periann Houghton (on appeal), Somerville, Tennessee, and Leslie I. Ballin (at trial), Memphis, Tennessee, for the appellant, Greg Patterson.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joni R. Livingston, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

Kimberly Patterson, the appellant's estranged wife, testified that she and the appellant began dating in 1991 and married in September 1999. At the time of the appellant's trial, they had a nine-year-old daughter and a three-year-old son. She said that she and the appellant had been best friends and that she had supported him "through everything." On the night of September 16, 2010, the appellant went out with friends. He arrived home sometime

after midnight on September 17. About 2:30 a.m., the appellant took his two nine millimeter handguns into the yard and began firing the weapons. Mrs. Patterson was afraid and moved their children into the bedroom with her. The appellant continued to fire the weapons until about 4:30 a.m.

Mrs. Patterson testified that about 6:00 a.m., she and the children got ready for the day, and she went into the kitchen. The appellant was in the kitchen, looking out a window. He told her that five sheriff's deputies were outside and that the deputies were trying to get two men out of the Pattersons' pond. Mrs. Patterson went outside, but no one was there. As she and the children were leaving the house, the appellant stopped them and told Mrs. Patterson that a man wearing an alligator suit was in the pond. Mrs. Patterson said that the appellant "was seeing things that obviously weren't there" and that she did not know what to do. She took her son to a babysitter and took her daughter to work with her.

Mrs. Patterson testified that about 1:30 p.m., she spoke with the appellant's mother. She told her mother-in-law about the appellant's behavior and asked her mother-in-law to talk with the appellant about getting help for their marriage. Mrs. Patterson had decided that she was not going home and that she wanted to end the marriage. However, after talking with her mother-in-law, she decided to return home. When she and the children got home that evening, she and the appellant talked, and the appellant said he would get help. The appellant wanted the family to go to a high school football game that night, and Mrs. Patterson agreed that the family would go to the game. However, before they left for the game, the appellant insisted that his wife go with him to look at some property for sale. Mrs. Patterson left with the appellant in his truck while their children stayed at their home with the appellant's mother. During the drive, the appellant kept telling Mrs. Patterson that she needed to be a wife, work less hours, and be home in a more timely fashion. The appellant was angry and suddenly stopped the car. Mrs. Patterson said that he reached over and that she "ducked" because she thought he was going to hit her. Instead, the appellant pointed a rifle at her and told her that she needed to be faithful in their marriage. She said that she had never been unfaithful to the appellant and that she was afraid for her life.

Mrs. Patterson testified that she got the appellant to calm down and that he drove them home. She said that when they pulled into the driveway, the appellant told her that he could "use one bullet to take both of [them] out" and that their children and his mother would find them in the truck. The appellant left his rifle in his truck, and he and his wife went into the house. Then they left in her car with the children to go to the football game. On the way to the game, the appellant told Mrs. Patterson that he was fine and that he was not going to get any help. Mrs. Patterson said she realized that she could not go home with the appellant. When the family arrived at the football game, the appellant went to get refreshments. Meanwhile, Mrs. Patterson contacted her parents. Her sister drove her, her parents, and the

children to the sheriff's department. There, Mrs. Patterson spoke with Officer Richard Buntin and gave him permission to search her car, which was still parked at the football game, and the appellant's truck, which was parked at the Pattersons' home. She said she had no reason to believe that the rifle the appellant pointed at her was not loaded.

On cross-examination, Mrs. Patterson acknowledged that she was upset about the appellant's coming home in the early morning hours of September 17. However, she did not argue with him. She also acknowledged that although she was afraid of the appellant several times on September 17, she never called the police. She said that when she got home from work that evening, she intended for the appellant to get help so they could save their marriage. However, after the appellant pointed the rifle at her, she had doubts as to whether she wanted their marriage to continue. Mrs. Patterson filed for divorce on September 22, 2010. She acknowledged using the criminal charge filed against the appellant in this case to prevent him from having visitation with their children.

On redirect examination, Mrs. Patterson testified that she did not call the police on September 17 because she was scared and "didn't know how to get out." She acknowledged that she was testifying against the appellant because she was concerned for her children's safety.

Officer Richard Buntin of the Lauderdale County Sheriff's Department testified that he was working at the sheriff's department on the night of September 17, 2010, and that he spoke with Kimberly Patterson, who was "very distraught" and "absolutely terrified." Mrs. Patterson told the officer that a weapon was in the appellant's Ford pickup truck, which was parked at their home, and gave him permission to search the truck. She also told him that a handgun could be in a bag in her car, which was parked at the high school football game. Officer Buntin went to the high school first. By that time, a school resource officer had arrested the appellant. Officer Buntin searched Mrs. Patterson's car and found the bag but did not find a gun in the bag. Later, Officer Buntin went to the Pattersons' house, searched the appellant's truck, and found a Remington rifle on the rear floorboard. The rifle was covered with a towel. Officer Buntin also searched the Pattersons' home and found additional firearms.

On cross-examination, Officer Buntin testified that the rifle he found in the appellant's truck was not loaded. The guns he found in the home also were not loaded.

The appellant was charged with aggravated assault committed by knowingly causing another to reasonably fear imminent bodily injury by use or display of a deadly weapon, a Class C felony. However, the jury convicted him of reckless endangerment with a deadly weapon, a Class E felony. After a sentencing hearing, the trial court sentenced him as a

Range I, standard offender to eighteen months to be served in community corrections.

## Analysis

The appellant contends that the evidence is insufficient to support the conviction because Mrs. Patterson's testimony was "not consistent with how most victims that are truly threatened behave." When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Initially, we note that felony reckless endangerment is not a lesser-included offense of aggravated assault as charged in the indictment. See State v. Moore, 77 S.W.3d 132, 135 (Tenn. 2002). However, as noted by the State, the appellant filed a pre-trial motion, requesting that the trial court instruct the jury on lesser-included offenses, including felony reckless endangerment. Although the jury instructions have not been included in the appellate record, the trial court announced at the close of proof that it was going to instruct the jury on felony reckless endangerment as a lesser-included offense. When a defendant actively, yet erroneously, seeks an instruction on a lesser-included offense, the defendant effectively consents to an amendment of the indictment. Demonbreun v. Bell, 226 S.W.3d 321, 326 (Tenn. 2007); see State v. Abron Spraggins, No. W2009-01073-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 365, **7-11 (Jackson, May 7, 2010), perm. to appeal denied, (Tenn. 2010).

Turning to the appellant's sufficiency argument, the appellant contends that his wife's testimony was unbelievable. However, as stated previously, questions concerning the credibility of witnesses and factual discrepancies within the evidence are reserved for the trier of fact. It is within the jury's province to accredit the testimony of a witness in whole or in part. Obviously, the jury accredited Mrs. Patterson's testimony that the appellant

pointed the rifle at her. Therefore, there is no merit to the appellant's claim that the evidence is insufficient because his wife's testimony was unbelievable.

Although not raised by the appellant, the State contends that it was reasonable for the jury to infer that the rifle was loaded when the appellant pointed it at the victim. We disagree with the State.

Felony reckless endangerment is defined as "engaging in conduct . . . which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). "Reckless endangerment committed with a deadly weapon is a Class E felony." Tenn. Code Ann. § 39-13-103(b)(2). A firearm is a "deadly weapon." Tenn. Code Ann. § 39-11-106(a)(5)(A). Our supreme court has explained that in order for the threat "to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999). In Payne, our supreme court noted in a footnote that, unlike the Model Penal Code, which states that recklessness and danger shall be presumed when a person points a firearm, unloaded or not, at another, our state statute requires imminent danger, not mere possibility of danger. Id.

In Spraggins, the evidence showed that the victim and the defendant got into an argument and that the defendant pulled a gun from underneath the seat of his truck, pointed it at the victim, and threatened to kill her. No. W2009-01073-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 365, at *1. At trial, the jury convicted the defendant of reckless endangerment with a deadly weapon. Id. On appeal, the defendant argued that the evidence was insufficient to support the conviction because the State failed to prove that the gun was fired, loaded, or even operational. Id. at *6. However, this court held that the evidence was sufficient, stating,

> the evidence established that in the course of a heated argument with the victim, the defendant pulled a gun out from under the seat of his vehicle, pointed it directly at the victim, and announced that he was going to kill her. Although there was no evidence that the gun was loaded or operational, there was also no evidence that it was not. Thus, a rational jury could reasonably conclude that the victim was placed in imminent danger of death or serious bodily injury by the defendant's actions in pointing a gun at her during the heated exchange.

Id.

Turning to the instant case, the evidence established that the appellant and Mrs. Patterson went for a drive, that the appellant stopped the car, and that he pointed a rifle at her. She calmed him down, and he drove them home. When they arrived in the driveway of their home, the appellant said he could shoot them both with one bullet. He left the rifle in his truck and went inside with his wife. Then they left their home with their children and drove in Mrs. Patterson's car to a high school football game, where the appellant was arrested. Later, Officer Buntin searched the appellant's truck and found the rifle, unloaded. Unlike Spraggins, the evidence in this case shows that the appellant's rifle was not loaded when he pointed it at Mrs. Patterson. Therefore, the State failed to prove that she was placed in imminent danger of death or serious bodily injury as that terminology is defined by statute and supreme court case law. The evidence is insufficient to support the appellant's conviction of felony reckless endangerment.

### III. Conclusion

Based upon the record and the parties' briefs, the appellant's conviction is reversed, and the original charge is dismissed.

_____
NORMA McGEE OGLE, JUDGE