# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 6, 2013

## STATE OF TENNESSEE  v.  ANDRA L. TAYLOR

**Direct Appeal from the Circuit Court for Madison County**
**No. 11207      Donald H. Allen, Judge**

---

**No. W2012-01660-CCA-R3-CD  -  Filed October 25, 2013**

---

The defendant, Andra L. Taylor, was convicted of aggravated burglary, employing a firearm during the commission of a dangerous felony, and two counts of reckless endangerment involving a deadly weapon.  He was sentenced to an effective fourteen-year sentence in the Department of Correction.  On appeal, he raises the single issue of sufficiency of the evidence, but only with regard to one of his convictions for reckless endangerment. Following review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Daniel J. Taylor, Jackson, Tennessee, for the appellant, Andra L. Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

On April 4, 2011, a Madison County grand jury returned an eight-count indictment charging the defendant with: (1) aggravated burglary; (2) employing a firearm during the commission of or attempt to commit a dangerous felony; (3) employing a firearm during the commission of or attempt to commit a dangerous felony having previously been convicted of robbery; (4) aggravated robbery; and (5-8) four counts of aggravated assault.  The charges were based upon actions taken by the defendant in July 2009.  A trial was held in January

2012, at which multiple witnesses testified.

The events occurred in the early morning hours inside an apartment where the defendant had earlier been using drugs with the residents. The first witness, Ashley Hawkins, testified that she arrived home to her apartment from work around 10:00 p.m. She shared the apartment with her boyfriend, Allen Jones, and his father, Freddy Jones.[1] The two men were there when Ms. Hawkins arrived, along with Willie Smith and the defendant. The group all remained at the apartment for a few hours and used drugs during the period, and Ms. Hawkins acknowledged that she was "messed up" when they finally stopped around midnight. Ms. Hawkins testified that when they ran out of drugs, the defendant left, making no plans to return later in the evening. Mr. Smith remained at the apartment along with the residents. Ms. Hawkins and Allen went to bed and slept for a few hours.

Later, she was awoken by a knock on the door. Ms. Hawkins testified that Beverly Mathieu and Sonny Hudson had come to visit the couple and use drugs. According to Ms. Hawkins, she, Allen, Freddy, Ms. Mathieu, and Mr. Hudson all went into the small bedroom and shut the door. Mr. Smith remained in the living room. After the group had been talking for a few minutes in the bedroom, the incident occurred.

The defendant threw open the door and entered the room. He was armed with a pistol and fired a single shot, which struck Freddy in the stomach. Ms. Hawkins testified that she heard Freddy tell the defendant that "You shot me." Ms. Hawkins testified that the defendant said "it was a warning shot and the next one is for real . . . or for them to give him [the] money." As a result, Ms. Hawkins picked up her wallet and then threw the contents on the bed. Ms. Hawkins did acknowledge that she heard the defendant tell Freddy that he was sorry. She testified that the defendant walked to the bed and collected the money before leaving the apartment. Afterwards, Allen took Freddy to the hospital for treatment.

The State also called Freddy to testify at trial. He verified Ms. Hawkins' testimony as to what occurred during the evening with minor discrepancies in the details. He did verify that he was shot in the stomach by the defendant who had earlier been at the apartment using drugs.

Ms. Mathieu testified that she was there during the event and that she had been smoking crack cocaine earlier in the evening. She testified that she and her boyfriend, Mr. Hudson, arrived around 1:00 a.m. and, on the way to the bedroom, observed a black man on the floor in the living room. She confirmed the testimony that all five people entered the

---

[1]As the two men share the same last name, we will identify them in the opinion by their first names to prevent confusion.

bedroom. Ms. Mathieu stated that the group was talking when she heard what she believed to be a firecracker go off. She and Mr. Hudson were standing on the far side of the bed, opposite the door. When she turned toward the door, she saw that Freddy had been shot and heard someone say, "that's your warning, the next one is going to be for real or something to that point." She recalled Ms. Hawkins throwing money on the bed, but she did not recall someone taking it. Nor could Ms. Mathieu specifically recall the gun being pointed at her directly that evening because she was looking down or at Mr. Hudson. Ms. Mathieu was not able to identify the defendant as the man who committed these acts.

Mr. Hudson also testified at trial. He stated that he had gone to the apartment that evening with Ms. Mathieu in order to use drugs. He also placed the group in the bedroom at the time he heard a gunshot. He stated that after being there five or ten minutes, he heard a pop and noticed that Freddy was bleeding. Mr. Hudson testified that he saw a man in the doorway behind Freddy, but he did not get a good look at the man. He testified that he did observe that the man was armed with an old revolver and was waving it around and demanding money. Mr. Hudson testified that he specifically recalled that the man pointed the gun at him at one point during the incident.

It was not disputed by any witness that drugs were being used that evening, nor that their recollections were affected by that. Moreover, each of the witnesses, except Ms. Hawkins, acknowledged having prior criminal convictions.

The defendant did not testify at trial. However, his unsigned, written statement was introduced through the testimony of Investigator Aubrey Richardson with the Jackson Police Department. During the interview with Inv. Richardson, the defendant described an incident in which Mr. Smith had stolen some stereo equipment from him on a previous visit to town, but, during this visit, Mr. Smith said he could get it back. According to the defendant, Mr. Smith got a "piece of crap gun," and they went to the apartment to retrieve the equipment. When they arrived, the defendant visited with Freddy, whom he had previously met. At some point, according to the defendant, he and Mr. Smith went outside and got the gun.

According to the defendant's statement, when he reentered the apartment, he heard a baby crying. He testified that he approached the bedroom where Ms. Hawkins, Allen, and Freddy were all using methamphetamine. He stated that, as he walked into the room, he raised his arm up and the gun went off without his pulling the trigger. The defendant testified that he told Freddy he was sorry. He acknowledged that Ms. Hawkins had put money on the bed, but he denied that he took it. He did acknowledge, however, that he took the methamphetamine because it made him mad that they were using it. He claimed he later threw it away, along with the gun, which again fired of its own volition when he threw it in the river.

-3-

After the State rested, the defendant moved for a judgment of acquittal. The court granted the motion regarding the aggravated assault against Ms. Mathieu only because she testified that she never actually saw the gun. The State also dismissed the aggravated assault charge regarding Allen, as he failed to testify at trial. Additionally, the charge for being in possession of a firearm during a dangerous felony after having been convicted of a felony was dismissed. Following deliberations, the jury convicted the defendant of aggravated burglary, employing a firearm during the commission of a dangerous felony, and two counts of the lesser offense of reckless endangerment. The jury found the defendant not guilty of aggravated robbery. A sentencing hearing was later held, and the defendant was sentenced to an effective sentence of fourteen years in the Department of Correction. The defendant filed a motion for new trial, which was denied by the trial court. This timely appeal followed.

## Analysis

On appeal, the defendant challenges only the sufficiency of the convicting evidence with regard to the reckless endangerment conviction against Sonny Hudson. No challenge is made to any of the three other convictions or any of the sentences imposed.

"When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (2011); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[O]n appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 331 S.W.3d at 379 (internal quotation omitted). It is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Reviewing courts should neither re-weigh the evidence nor substitute their own inferences for those drawn by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

The trial court's approval of the jury's verdict accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *State v. Moats*, 906 S.W.2d 431, 433-34 (Tenn. 1995). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules apply whether the verdict is predicated upon direct evidence, circumstantial evidence, or a combination of both. *Dorantes*, 331 S.W.3d at 379.

In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *Id*. at 381.

As charged in this case, reckless endangerment occurs when a person "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a) (2010). Our supreme court has held that "for the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999) (citing *State v. Fox*, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996)). The court further held that "the term 'zone of danger' may be employed to define that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." *Id*.

According to the defendant, the proof presented at trial fails to establish that Mr. Hudson was in imminent danger during the incident. A reading of his brief seems to rely upon the facts that Mr. Hudson was standing against the far wall of the room, was high on methamphetamine, and could not identify the defendant as the shooter. He highlights portions of testimony from both Freddy and Ms. Mathieu and seems to argue that, based upon their testimony, the danger of death or serious bodily injury to Mr. Hudson was not actual or imminent. We disagree.

After review of the record, we are simply unable to agree with the defendant's argument. Viewing the evidence in the light most favorable to the State, the evidence is sufficient to support the conviction. The defendant himself does not dispute that he went into the small room, which was crowded with people, while holding a self-described "piece of crap gun," and that Freddy was shot as a result. Testimony from multiple witnesses stated that the defendant was waving the gun around and threatening to fire the weapon again if he was not given money. Mr. Hudson testified that, at one point, the gun was actually pointed at him. While there were discrepancies in the details of the witnesses' testimony at trial, it is understandable in light of the fact that they were under the influence of narcotics and confronted with a man waving a gun around, demanding money. Regardless, the jury was presented with all the testimony of the witnesses and chose to accredit that testimony with regard to the fact that the defendant shot into a bedroom area and that his action placed Mr. Hudson in imminent danger of death or serious bodily injury. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003).

**CONCLUSION**

Based upon the foregoing, the judgments of conviction are affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE