IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 10, 2016 Session

## STATE OF TENNESSEE v. LEROY MYERS, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1303     Steve R. Dozier, Judge**

_____

**No. M2015-01855-CCA-R3-CD – Filed November 4, 2016**

_____

After a bench trial, the trial court issued a written order finding the Defendant, Leroy Myers, Jr., not guilty of the charged offense, aggravated assault, but guilty of reckless endangerment with a deadly weapon. On appeal the Defendant asserts that reckless endangerment is not a lesser-included offense of aggravated assault under the facts of this case and that there was not an implicit amendment to the indictment to include reckless endangerment. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Jay Norman, Nashville, Tennessee, for the appellant, Leroy Myers, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn R. Funk, District Attorney General; and Jennifer Charles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

On May 27, 2014, a Davidson County grand jury indicted the Defendant for the aggravated assault of Sandra Custode. The Defendant waived his right to a jury trial and a bench trial began on May 28, 2015, and was continued until June 4, 2015, for further testimony. A complete transcript of the bench trial is not included in the record; therefore, we recite the facts as summarized in the trial court's order.

The State's first witness was Sandra Custode. She testified that she is a property inspector and has been employed in that capacity with Metro Codes for twenty-one (21) years. On March 13, 2014, she testified that she was present at [] Union Hill Road in her official capacity. She testified that it was her second time there. She testified that she also sent a letter to abate the codes violation at this location. She testified that the [D]efendant works on cars out of his garage, and she has received complaints. She traveled to the residence to take pictures, and she saw cars behind the fence in the yard. She testified that she is familiar with the [D]efendant because she investigated another codes violation involving the [D]efendant previously. The State entered photographs of the location into evidence (Exhibit 1). On the date of the incident, she testified that she was taking pictures from her car in front of the garage. She stated that the [D]efendant told her on a prior date that she should not be on his property. She testified that the [D]efendant came out yelling at her and said, "Fucking bitch, why don't you leave me alone" and "fucking fat bitch, go get someone else". She testified that he was screaming and she could see the spit coming out of his mouth. She further stated that the [D]efendant was approximately five feet from her car while it was parked on the street. She testified that she tried to tell the [D]efendant why she was there, but he kept ranting. She testified that he went back to his garage. She stated that she "pulled out on the road" and traveled about thirty (30) feet from the [D]efendant's driveway when she heard a gunshot. She testified that she looked back and heard the second shot. When she looked back, the [D]efendant was lowering the gun in her direction and the girl with him was laughing. Subsequently, she testified that she stopped her car farther down the road and called the police. She stated that she was really scared, crying, and shaken. She testified that "he shot because of me" and not at a hawk. She testified that the [D]efendant had chickens which were enclosed in a small cage. She also positively identified the [D]efendant in court.

Officer Jason Merithew, Metro Police Department (MPD), testified when he arrived the [D]efendant was working on a car at the garage. He testified that he stayed with the [D]efendant in the front yard.

Officer Jason Dudley, MPD, testified that when he arrived at the residence, the garage doors were open. He stated that the gun was inside the garage leaning up against a washing machine. Without objection, the State entered the gun into evidence (Exhibit 2). He testified that the gun was unloaded when he found it. He testified that two young people showed up at the residence, and they stated they did not see what happened.

2

Officer Joshua Borum, MPD, testified that on March 13, 2014, he did not see any chickens at the [D]efendant's residence. He testified that he saw the [D]efendant and he said the [sic] he was "shooting at hawks trying to attack his chickens". He testified that the [D]efendant said Ms. Custode had been at his house before.

The Court then heard from the [D]efendant. He testified that he has chickens, Rhode Island Reds. He stated that hawks pull the chickens through the screen. Further, he testified that, at the time of this incident, a hawk came in from the road, approximately fifty (50) yards from the street, and he fired his gun up in the air. He testified that, at no time, was he near Ms. Custode or her car at the street.

Ms. Mallory testified on behalf of the defense. She stated that the [D]efendant did not shoot at the victim. She testified that he was shooting at hawks. She also testified that he did not call the victim names.

In rebuttal, the State called Hugh Coleman, an investigator with the District Attorney's office. He stated the [sic] he spoke to Ms. Mallory about this incident. She stated to him that the [D]efendant shot because he was upset at the "code's lady".

Following the evidence, the State argued that the Defendant had fired a shotgun placing Ms. Custode in fear of imminent bodily injury and asked the trial court to convict the Defendant as charged. Defense Counsel responded that the State failed to show that Ms. Custode feared imminent bodily injury and that the proof did not support aggravated assault, much less reckless endangerment. Defense counsel then referenced two cases wherein a court concluded that "simply firing a weapon does not amount - - tantamount to reckless endangerment." The trial court then responded as follows:

[T]his case, like many to a large extent will boil down to the credibility issues and there are some issues to consider in terms of Ms. C[u]stode's testimony in terms of how she would know there was a gun there if she had already drove off. And whether Ms. Mallory and Mr. Myers are accurate in terms of where he was and the initial confrontation between the two and where he was then when the shot occurred. And [defense counsel]'s raised issues about, not in this direct discussion, but whether or not there might be less - - a lesser offense like reckless endangerment.

So I will take this under advisement to consider those issues . . . .

3

The trial court then invited defense counsel to submit copies of any of the cases he had referenced during closing argument about imminent danger. Defense counsel submitted two cases on reckless endangerment for the trial court's consideration: *State v. Payne*, 7 S.W.3d 25 (Tenn. 1999) and *State v. Terrence Shaw*, No. W2010-00201-CCA-R3-CD, 2011 WL 2176561 (Tenn. Crim. App., at Jackson, June 1, 2011), *no Tenn. R. App. P. 11 application filed*.

In an order filed on June 30, 2015, the trial court accredited the victim's testimony, concluding that the Defendant "did not transform from an outraged landowner to a humble hunter in a matter of seconds." Nonetheless, the trial court found insufficient proof to sustain an aggravated assault conviction. The trial court then considered reckless endangerment, specifically discussing the case law defense counsel had submitted regarding a "zone of danger." The trial court concluded:

> Here the [D]efendant did not merely shoot the gun into a tree. He fired the weapon twice in Ms. Custode's direction to scare her off of his property as she was leaving. Ms. Custode saw the [D]efendant lower the gun in her direction. Ms. Custode was present in the zone of danger, wherein a reasonable probability of danger existed. Therefore, the [D]efendant is guilty of reckless endangerment, a Class E Felony.

Thereafter, the Defendant filed a motion for judgment of acquittal on the basis that reckless endangerment is not a lesser-included offense of intentional or knowing aggravated assault. In its order denying the motion, the trial court agreed that reckless endangerment was not a lesser-included offense but reasoned as follows:

> In defense counsel's closing argument, he argued there was no assault. Referring to *State v. Payne*, 7 S.W.3d 25 (Tenn. 1999), he stated that simply firing a shotgun into a tree is not reckless endangerment, a Class E Felony. Defense counsel further argued that the [D]efendant's actions did not constitute reckless endangerment; therefore, it cannot be an assault "unless he was in the tree".
>
> . . . .
>
> Defense counsel raised the issue of whether the [D]efendant's actions could be a lesser included offense like reckless endangerment. Further, when the Court stated it would take the matter under advisement to consider lesser included offenses like reckless endangerment, defense counsel made no objection. In furtherance of defense counsel's argument

4

and for the Court's consideration of lesser[-]included offenses, he submitted two cases for the court to consider. Both of these were reckless endangerment cases. *State v. Payne*, 7 S.W.3d 25 (Tenn. 1999); *State v. Shaw*, W2010-00201-CCA-R3-CD (Tenn. Ct. Crim. App. June 1, 2011). The Court finds an effective amendment to the indictment because the [D]efendant actively sought to place it before the court on the uncharged offense, reckless endangerment. Therefore, the [D]efendant cannot complain about convictions on an offense which, without his own counsel's intervention, would not have been considered.

(footnotes omitted). In one of the footnotes to the order, the trial court noted, "Both the Assistant District Attorney and defense counsel discussed with the Court whether the facts merited a finding as to reckless endangerment versus aggravated assault."

## II. Analysis

On appeal, the Defendant asserts that the trial court erred when it found an effective amendment to the indictment to include reckless endangerment. The State responds that trial counsel's argument regarding reckless endangerment and the cases submitted on reckless endangerment support the trial court's finding of an effective amendment.

"[A] defendant cannot legally be convicted of an offense which is not charged in the indictment or which is not a lesser offense embraced in the indictment." *State v. Cleveland*, 959 S.W.2d 548, 552 (Tenn. 1997) (citing *State v. Trusty*, 919 S.W.2d 305, 310 (Tenn. 1996)). The indictment may be amended, however, with the defendant's consent. Tenn. R. Crim. P. 7(b)(1). In order for an indictment to be amended pursuant to Rule 7(b), "an oral or written motion to amend the indictment should be made, and the defendant's oral or written consent to the motion must be clear from the record." *State v. Stokes*, 24 S.W.3d 303, 303 (Tenn. 2000). Further, "[w]hen a defendant actively, yet erroneously, seeks an instruction on a lesser-included offense, the defendant effectively consents to an amendment of the indictment." *State v. Greg Patterson*, No. W2011-02101-CCA-R3-CD, 2012 WL 206287, at *3 (Tenn. Crim. App., at Jackson, Dec. 11, 2012) (citing *Demonbreun v. Bell*, 226 S.W.3d 321, 326 (Tenn. 2007)); *see also State v. Ealey*, 959 S.W.2d 605, 612 (Tenn. Crim. App. 1997) (holding that a defendant cannot "complain about convictions on an offense which, without his own counsel's intervention, would not have been charged to the jury") (internal quotation marks and citations omitted).

In the instant case, the Defendant was indicted for aggravated assault but was convicted of reckless endangerment. As correctly noted by the Defendant and conceded

by the State, reckless endangerment is not a lesser-included offense of intentional or knowing aggravated assault. *See, e.g., State v. Moore*, 77 S.W.3d 132, 136 (Tenn. 2002). Based upon the limited record before us, however, it appears the Defendant sought the trial court's consideration of reckless endangerment as a lesser-included offense.

One of the circumstances that the trial court relies upon in concluding that the Defendant affirmatively sought the trial court's consideration of reckless endangerment involves conversations not included in the record. The trial court twice references discussions that included defense counsel on whether reckless endangerment should be considered as a lesser-included offense. First, during closing argument, the trial court noted that defense counsel had previously raised the issue of reckless endangerment for consideration as a lesser-included offense. The trial court then stated it would take the matter under advisement for further consideration of "those issues." The Defendant did not object or attempt to correct the record when the trial court referenced this prior conversation about consideration of a lesser-included offense. The trial court invited the Defendant to submit case law, and the Defendant submitted case law on reckless endangerment for the trial court's consideration. Next, in the trial court's order denying the Defendant's motion for acquittal, it again referenced a discussion between the parties about reckless endangerment as a lesser-included offense. Unfortunately, we are limited in our review of this issue because the Defendant has provided only the five-page portion of the closing argument from the proceedings.

We note that defendants have a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to the issues which form the basis of the appeal" and will enable the appellate court to decide the issues. T.R.A.P. 24(b).

> It is well-established that an appellate court is precluded from considering an issue when the record does not contain a transcript or statement of what transpired in the trial court with respect to that issue. Moreover, the appellate court must conclusively presume that the ruling of the trial judge was correct, the evidence was sufficient to support the defendant's conviction, or the defendant received a fair and impartial trial. In summary, a defendant is effectively denied appellate review of an issue when the record transmitted to the appellate court does not contain a transcription of the relevant proceedings in the trial court.

*State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). Accordingly, the Defendant's failure to include a complete transcript of the proceedings forming the basis of this appeal results in waiver to any challenge of the lower court's rulings. *See generally State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993) (appellant's failure to provide court with complete record relevant to issues presented constitutes waiver of

issue); *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990) (appellate court is precluded from considering issue when record does not contain transcript of what transpired in trial court with respect to that issue). We note that alternatively, the Defendant had the right to file a summary of the facts pursuant to Tennessee Rule of Appellate Procedure 24, but declined to do so. Or, if the statements in the trial court's order incorrectly reflected the proceedings as the Defendant alleges, the Defendant could have filed a motion to correct the trial court's order; however, the record contains no such motion. Thus, we are left with the record as provided by the Defendant.

In the absence of a complete record, we must presume the findings of the trial court are correct. *See State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992). As such, we presume the correctness of the trial court's determination that the conversations not contained in the record included the Defendant actively seeking consideration of reckless endangerment as a lesser-included offense. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

7