IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2026 Session

**STATE OF TENNESSEE v. MARTHA JANE DUROCHER**

**Appeal from the Circuit Court for Maury County**
**No. 60CC1-2023-CR-30476        David L. Allen, Judge**

_____

**No. M2024-01290-CCA-R3-CD**

_____

Defendant, Martha Jane Durocher, was indicted by the Maury County Grand Jury for reckless endangerment with a weapon. Defendant was convicted as charged after a bench trial, and the trial court imposed a two-year sentence to be suspended on probation. Defendant appeals, arguing the evidence at trial was insufficient. Because the evidence does not establish that Defendant's conduct placed any person or persons in imminent danger of serious bodily injury or death, we reverse and vacate her conviction for felony reckless endangerment with a weapon.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Vacated; Case Dismissed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and TOM GREENHOLTZ, JJ., joined.

Travis Jones, District Public Defender; Robert R. Wagonschutz, Assistant Public Defender, Tennessee, for the appellant, Martha Jane Durocher.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Brent Cooper, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the morning of March 28, 2023, Rebekah Newell was at her home on Wheeler Drive in Columbia with her mom, her husband, and her four children. The Newells lived next door to Defendant, but they had never met. Mrs. Newell was homeschooling three of her children beside a window on the front of her house when she heard "a lot of gunshots,

very loud." She testified that "[i]t went on for long enough that [her] husband came into the room and told the kids to get away from the window and [her] mom called the police because she was freaked out." Mrs. Newell believed she heard "at least seven" gunshots. As soon as the gunfire stopped, Mrs. Newell looked outside and saw "a black long gun sticking out of the back door of [Defendant]'s house." Mrs. Newell said the barrel of the gun "was pointing directly towards the backyard, so straight. And then it just went inside." Mrs. Newell saw Defendant come outside, but she did not see anyone else enter or exit the house before police arrived. On cross-examination, Mrs. Newell agreed that she did not see the trajectory of the shots being fired, only the barrel of the rifle after the shots ceased. She also agreed that the road that travels into Woodland Park is a steep hill.

Corporal Scott Baublitz of the Columbia Police Department ("CPD") was the first officer to arrive at the scene. Defendant was the only person present at the property. Corporal Baublitz looked around the backyard for evidence of fireworks or projectiles and "even went so far as to checking trees for bullet holes." Officers did not observe any damage from gunfire to the fence or any other structures. They located several 7.62x39 mm shell casings on the ground outside of Defendant's house, and they found an SKS rifle and pistol and holster in the main bedroom of the home while conducting a "protective sweep" of the home.

CPD Officer Nathan Wyrick also responded to the scene. When he left Defendant's residence, he went to Woodland Park "to ensure nobody had been hit and if there was anybody out there and about in the park." Officer Wyrick testified the park was "directly up the hill" from Defendant's residence and that there were "approximately three houses" between Defendant's house and the park. Officer Wyrick found people using the playground, but no one was injured. On cross-examination, Officer Wyrick acknowledged that the park was actually over a hill and not visible from the back of Defendant's residence. He also acknowledged he never heard or saw any shots being fired and that he did not know whether people were present in the park at the time any shots were fired.

A bodycam video of the officers' encounter with Defendant was entered as evidence and shown to the jury. Several photographs of Defendant's backyard were also admitted as evidence. The photos showed a patio with a retaining wall behind Defendant's house. The yard behind the retaining wall sloped up away from the house and contained a large tree. A gunshot residue test revealed the presence of gunshot residue particles on Defendant's hands.

Based on this evidence, the trial court found Defendant guilty of reckless endangerment with a weapon and sentenced her to two years to be suspended on probation. The trial court denied Defendant's motion for new trial, and Defendant appeals.

*Analysis*

Defendant contends that the evidence was insufficient to support her conviction for reckless endangerment because the State failed to establish that any person was in the zone of danger. The State argues the evidence was sufficient.

On appeal, a conviction removes the presumption of the defendant's innocence and replaces it with one of guilt, so that the defendant carries the burden of demonstrating to this court why the evidence will not support the findings of the trier of fact. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). In a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *see also State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

A person commits reckless endangerment who "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). A person "acts recklessly . . . when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." T.C.A. § 39-11-106(33). Further, "[t]he risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the

accused person's standpoint." *Id*. A threat of death or serious bodily injury is "imminent" when a person is placed in a reasonable probability of danger as opposed to a mere possibility of danger. *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999). While it is generally a Class A misdemeanor, reckless endangerment becomes a Class E felony when committed with a deadly weapon, which definition expressly includes a firearm. T.C.A. § 39-13-103(b); -106(a)(6)(A).

The State may indict a defendant for committing reckless endangerment against the public at large if that term refers to the "class of persons occupying the 'zone of danger'"— that is, the class of people present in the area where "a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury." *Payne*, 7 S.W.3d at 28.

This Court has routinely held that evidence is insufficient to establish felony reckless endangerment in cases where a defendant fires a weapon away from a person. *See State v. Buford*, No. E2004-01780-CCA-R3-CD, 2005 WL 1488578, at *4 (Tenn. Crim. App. June 23, 2005) (risk of injury was mere possibility when the defendant fired his gun "into the air" and "away from both the street and any buildings in the vicinity that could have been occupied"); *State v. Baldwin*, No. 01C01-9612-CR-00530, 1998 WL 426199, at *4 (Tenn. Crim. App. July 29, 1998) (possibility that "the bullet could have ricocheted off one of the metal appliances" to strike a bystander was insufficient to prove imminent danger); *State v. Fox*, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996) (risk of injury was not reasonably probable when the defendant "discharge[d] [his] weapon into the air or up into a tree top").

Viewing the evidence in the light most favorable to the State, we conclude that the evidence does not establish that Defendant's firing a weapon from the back door of her home created a reasonable probability that another person or persons would be killed or seriously injured. The State asserts that Defendant "discharged an assault rifle more than a dozen times while it was pointed out of her door in the direction of a nearby playground that was roughly half a mile away and occupied at the time." There was no testimony or other evidence that a bullet impacted anything in the vicinity of Defendant's back yard. Moreover, there was no testimony that there was anyone at the playground at the time the shots were fired. Although Mrs. Newell testified she heard gunshots and then saw the barrel of a rifle pointing "directly towards the backyard," which the evidence showed sloped up away from Defendant's house, Mrs. Newell did not see the gun being fired or the direction in which it was fired. There is no evidence that Defendant pointed or fired the gun in anyone's general direction. There was also no testimony that any bullet impact marks were ever discovered.

- 4 -

Based on this evidence, the proof did not establish any person or persons in the zone of danger such that "a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury." *Payne*, 7 S.W.3d at 28. Consequently, we must reverse Defendant's conviction. We also conclude that the underlying indictment should be dismissed because there is no other conduct by Defendant to support a lesser offense. *See Bandy v. State*, 575 S.W.2d 278, 281 (Tenn. 1979).

CONCLUSION

Based on the record, the arguments and briefs of the parties, and the applicable law, we reverse and vacate Defendant's conviction for felony reckless endangerment.

_S/Timothy L. Easter_
TIMOTHY L. EASTER, JUDGE